UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA,
    Plaintiff,

v.   Case No. 3:22-cr-23-BJD-PDB

AARON ZAHN and
RYAN WANNEMACHER,
    Defendants.
_____/

## DEFENDANTS' RESPONSE
## IN OPPOSITION TO MOTION TO QUASH

Defendants Ryan Wannemacher and Aaron Zahn respond in opposition to the motion to quash or for a protective order, Doc. 99, filed by non-party Nelson Mullins Riley & Scarborough LLP ("Nelson Mullins"). Mr. Zahn and Mr. Wannemacher sought the subpoena Nelson Mullins seeks to quash based on their good faith belief that the documents responsive to the subpoena are essential to their defense. Nelson Mullins seeks to quash the subpoena as to a Memorandum it provided to the prosecutor and three related email communications (the "Withheld Documents"). The circumstances of Nelson Mullins' communications with the prosecutor show that the Withheld Documents are likely to be relevant to critical constitutional issues in this criminal case. Moreover, Nelson Mullins has waived any claim of work product regarding the documents by producing them to the government. For these reasons and the reasons described in the following Memorandum, Nelson Mullins' motion to quash should be denied.

# MEMORANDUM

## I. Background

### A. The allegations of the Indictment

The Indictment alleges that JEA is a municipal utility owned by the City of Jacksonville (the "City"). Doc. 1 ¶ 1. Mr. Wannemacher is JEA's former Chief Financial Officer and Mr. Zahn is its former Chief Executive Officer. *Id.* The Indictment charges that Mr. Zahn and Mr. Wannemacher conspired to defraud JEA, the JEA Board, and the City by failing to disclose material information and making false representations regarding the development of an Invitation to Negotiate ("ITN") that solicited bids for the purchase of JEA and a long-term incentive plan known as the Performance Unit Plan ("PUP"). Doc. 1 at 8. The Indictment also charges a substantive wire fraud count in connection with the July 23, 2019, JEA Board Meeting at which the ITN and PUP were approved. *Id.* at 26-27.

### B. The *Garrity* Issue

The Defendants' subpoena relates to one of the critical pretrial issues in this case: the treatment of compelled testimony by Mr. Zahn and Mr. Wannemacher that is protected under *Garrity v. New Jersey*, 385 U.S. 493 (1967).[1] Under the Supreme Court's *Garrity* opinion, where a public employee has provided compelled testimony, the government may not in a subsequent prosecution use the employee's "immunized

---

[1] The facts related to the Defendants' compelled testimony are explained in detail in the Defendants' motion for leave to file the subpoena on Nelson Mullins, Doc. 70 at 2-4, and the Defendants' *Kastigar* motions, Doc. 114 at 6-23, Doc. 115 at 6-11.

2

testimony itself or any evidence that was tainted – substantively derived, shaped, altered, or affected, by exposure to the immunized testimony." *United States v. Slough*, 641 F.3d 544, 549 (D.C. Cir. 2011). "Nor can the government use it to develop investigatory leads, to focus an investigation on a witness, or to motivate another witness to give incriminating testimony." *Id.* (internal citations omitted).

Both Mr. Zahn and Mr. Wannemacher were required to provide compelled testimony in this case. Although the federal prosecutor has represented that he and the other members of the prosecution team did not review the Defendants' *Garrity* testimony, multiple other teams of investigators made use of the compelled testimony in investigating the same events that resulted in the indictment of the Defendants, then discussed the results of their efforts with the prosecution team.

As a result of these issues, both Defendants have filed motions for a hearing under *Kastigar v. United States*, 406 U.S. 441 (1972) ("*Kastigar* motions"), at which the government would be required to demonstrate that it has an independent source for the evidence used to obtain the Indictment and the evidence it intends to introduce against the Defendants at trial (a "*Kastigar* hearing"). Doc. 114, Doc. 115. The communications between Nelson Mullins and the prosecution team are significant to the Defendants' *Kastigar* motions because Nelson Mullins attorneys reviewed the Defendants' compelled testimony shortly after it was given, then became involved in the investigation into their conduct. *See* Doc. 114 at 120. The Defendants' compelled testimony was given in December 2019 and January 2020. In February 2020, the City Council convened a "Special Investigatory Committee on JEA Matters" ("SIC"),

which was charged with investigating the PUP, the ITN, and the pursuit of potential privatization of JEA. Nelson Mullins applied to serve as counsel to the SIC.  Although Nelson Mullins was not selected as SIC counsel, Nelson Mullins provided the SIC with a Memorandum regarding the "due diligence" investigation the firm conducted in connection with its application, and Nelson Mullins attorneys provided extensive testimony at the first SIC hearing, on February 24, 2020.  *See* Doc. 114 A23; A24; A35:5-79.

Nelson Mullins was then retained to represent JEA in subsequent employment litigation with Mr. Zahn.  JEA filed suit against Mr. Zahn relating to the PUP, charging fraud and seeking to invalidate Mr. Zahn's employment agreement with JEA and prevent him from obtaining severance compensation.  *See* Ex. 3.  Nelson Mullins also represented JEA in proceedings relating to the termination of numerous JEA senior leadership team members.  The SIC instructed its counsel, Smith Hulsey & Busey, and Nelson Mullins to coordinate their efforts.  Doc. 114 A36:34-36.  Nelson Mullins attorneys worked closely with the SIC's counsel, including sharing documents and information back and forth and participating jointly in each other's witness interviews. *See*, *e.g.*, Doc. 114 A15; A37:2; A39:210-11; A40:2; A41:2; A42:2.

Throughout Nelson Mullins' investigation into the Defendants, Nelson Mullins attorneys felt free to use the Defendants' compelled testimony.[2]  Likewise, the SIC, the

---

[2] For example, as discussed in Mr. Zahn's *Kastigar* motion, Doc. 115 at 24-25, Nelson Mullins incorporated Mr. Zahn's *Garrity* testimony into JEA's civil complaint against Mr. Zahn, which was filed in June of 2020.  *See also* Ex. 3.

4

SIC's counsel, and members of the City of Jacksonville's Office of General Counsel ("OGC") and Council Auditor's Office ("CAO") who were also investigating these matters all had access to the Defendants' *Garrity*-protected testimony and freely used it in their investigative efforts, including in questioning witnesses and discovering investigative leads.

Having had unrestricted access to the Defendants' *Garrity*-protected testimony, having collaborated with the other teams of investigators who also felt free to use the Defendants' compelled testimony, and having an interest in seeing a criminal prosecution initiated, Nelson Mullins attorneys shared the results of their work with the prosecutor. In response to the Rule 17(c) subpoena to Nelson Mullins, the firm produced the emails attached to this response as Exhibit 1. These emails reflect that prior to the return of the Indictment, Nelson Mullins attorney Lee Wedekind and the prosecutor had telephone conversations in July 2020 and an in-person meeting in December 2020. Ex. 1 at 1-14. After the Indictment was returned on March 2, 2022, the prosecutor contacted Mr. Wedekind to set up another call, stating that he wished to "schedule a call to get better acquainted with the related civil litigation that JEA is involved with." *Id.* at 15-17.

Nelson Mullins has declined to produce the Withheld Documents, which consist of a memorandum Nelson Mullins sent the prosecutor in January 2021 and three related emails. The privilege log Nelson Mullins produced regarding these documents is attached as Exhibit 2. The Withheld Documents are the subject of Nelson Mullins' motion to quash. Doc. 99 at 3-4.

## II.     The Motion to Quash should be denied.

The Court should deny Nelson Mullins' motion to quash and instruct Nelson Mullins to produce the Withheld Documents. These documents are likely to be relevant to a critical issue in this case. Moreover, Nelson Mullins has waived any work product protection applicable to the Withheld Documents by providing them to the government.

### A.     The Withheld Documents are likely to be relevant to a critical issue in this case.

The Motion to Quash should be denied because the Withheld Documents are likely to be relevant to a significant issue that is presently being litigated in this case[3] – whether the evidence the government has used and intends to use against them was derived from their compelled testimony. The *Garrity/Kastigar* issue in this case makes the substance of any communication about the events here between attorneys who reviewed the Defendants' compelled testimony and a member of the prosecution team important.

The items sought in the Rule 17(c) subpoena—(1) Nelson Mullins' policies regarding the collection, recording, or disclosure of *Garrity* statements, (2) Nelson Mullins' communications with the government's Prosecution Team related to the SIC

---

[3]The Defendants' filing of the *Kastigar* Motions does not moot the Defendants' request for the Withheld Documents. Mr. Wannemacher reserved the ability to seek leave to supplement his *Kastigar* motion if additional evidence is discovered. Doc. 114 at 2 n.2. Additionally, the relief requested in the Defendants' motions is a *Kastigar* hearing, which would provide Defendants an opportunity to present evidence regarding whether the government's evidence is tainted by exposure to their *Garrity*-protected statements.

investigation, or (3) Nelson Mullins' communications that repeat, paraphrase, or summarize Mr. Wannemacher's or Mr. Zahn's *Garrity* statement—would make the fact that the government has used evidence derived from the *Garrity* statements more or less likely and therefore satisfy the basic requirement of relevance. Fed. R. Evid. 401; *see United States v. Chukwu*, 842 F. App'x 314, 319 (11th Cir. 2021) (describing relevance threshold under Rule 401 as a "low bar"); *United States v. Libby*, 432 F. Supp. 2d 26, 31 (D.D.C. 2006) (citing Rule 401's relevance test to determine to quash Rule 17(c) subpoena).

Indeed, the Defendants argued this theory of relevance when they filed their motion to issue the Rule 17(c) subpoena. Doc. 70. That is, they explained that the items sought from Nelson Mullins were relevant because they were "likely to lead to information about the SIC investigation that has not been made publicly available, including details of the coordination between the SIC with the Prosecution Team that may have indirectly exposed the Prosecution Team or grand jury witnesses to the Defendants' *Garrity* statements." *Id.* at 6.

Nelson Mullins' assertion that the subpoena should be quashed because the items listed "do not relate to any of the elements that the United States must prove at trial," Doc. 99 at 6, is thus misplaced. As Nelson Mullins must admit, a Rule 17(c) subpoena is not limited to obtaining *trial* evidence. The subpoena is "an aid for obtaining relevant and evidentiary materials which the moving party plans to use at trial *or in some other court proceeding*." Doc. 99 at 5 (quoting *United States v. Noriega*, 764 F. Supp. 1480, 1492 (S.D. Fla. 1991)) (emphasis added). Communications between

7

Nelson Mullins and the prosecutor are relevant to a significant pretrial proceeding—the anticipated *Kastigar* hearings.

Nelson Mullins' description of the Withheld Documents as relating to its pending litigation against Mr. Zahn, Doc. 99 at 6, far from establishing their irrelevancy, tends to show they are likely to be pertinent to the issues here. JEA's litigation against Mr. Zahn is largely based on the same events and conduct as are described in the Indictment and asserts many of the same theories. *Compare* Doc. 1 (Indictment) *with* Exhibit 3 (JEA Complaint against Mr. Zahn) *and JEA v. Zahn*, 326 So. 3d 790, 791 (Fla. 1st DCA 2021). Nelson Mullins had access to and was able to rely on the Defendants' *Garrity*-protected testimony in framing the Complaint against Mr. Zahn and litigating JEA's case against him. The written materials Nelson Mullins provided the prosecutor about that litigation are thus highly likely to be relevant to the issues raised in the Defendants' *Kastigar* motions.

The Withheld Documents are communications with the prosecutor prepared by attorneys who had reviewed Mr. Zahn and Mr. Wannemacher's compelled testimony and used their testimony to investigate the same conduct they are being prosecuted for. The Withheld Documents are relevant, fall within the scope of the Subpoena, and should be produced.

> **B.   Nelson Mullins may not rely on the work product privilege to avoid production of the Withheld Documents.**

The work product privilege does not preclude production of the Withheld Documents. Nelson Mullins has not demonstrated that the documents are protected

by the work product privilege. Moreover, any privilege that may have been applicable to the Withheld Documents has been waived by Nelson Mullins' voluntary production of them to the government. Even if they had not, the production of these documents is essential to protect the Defendants' Fifth Amendment rights.

### 1. Nelson Mullins has not established that the Withheld Documents are privileged.

While Nelson Mullins has asserted that the "Court should quash the Subpoena *to the extent* that it seeks privileged documents protected by the work product doctrine," Doc. 99 at 7 (emphasis added), it has not provided sufficient information to permit an informed evaluation of the extent to which work product protection applies to the Withheld Documents. To receive work product protection, materials must have been prepared in anticipation of litigation. *See, e.g.*, Fed. R. Civ. P. 26(b)(3). At the very least, the emails between Nelson Mullins and the prosecutor were not prepared in anticipation of litigation by JEA and cannot be deemed work product. Nelson Mullins does not have an attorney-client relationship with the government, and according to Nelson Mullins, they were transmittal emails, not communications made in preparation for litigation. Likewise, if the Memorandum was not prepared in anticipation of litigation, but instead was prepared specifically for the purpose of being produced to the government, it would not qualify for work product protection. *See SEC v. Herrera*, 324 F.R.D. 258, 265 (S.D. Fl. 2017) (PowerPoint presentation "prepared specifically for the SEC" was "not protected by work-production immunity").

9

The Court need not determine whether the Withheld Documents are privileged because, as discussed below, any privilege that may have been applicable to them has been waived. Should the Court conclude that it is necessary to make such a determination, however, it may be appropriate for the Court to review them in camera.[4] *In re Fundamental Long Term Care, Inc.*, 509 B.R. 956, 965 (Bankr. M.D. Fla. 2014) (where it was unclear whether an email was privileged, it was appropriate for court to review it in camera to determine whether it should be produced).

      **2.    Nelson Mullins waived any privilege that was applicable to the Withheld Documents by producing them.**

Assuming any of the Withheld Documents were subject to work product protection, Nelson Mullins waived any such protection by voluntarily providing them to the government. "The protection provided by the work-product doctrine is not absolute, and may be waived." *In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, 270 F. Supp. 3d 1332, 1338 (S.D. Fla. 2017) (citing *United States v. Nobles*, 422 U.S. 225, 238, 239 (1975)). "Generally, work-product protection is waived when protected materials are voluntarily disclosed in a manner which is either inconsistent with maintaining secrecy against opponents or which 'substantially

---

[4] Defense counsel conferred with Nelson Mullins regarding their anticipated request that the Court review the Withheld Documents in camera. Nelson Mullins responded that it believes the Court should be able to rule on it motion without the need for an in camera review, but that if the Court determines that it cannot rule on the motion without first reviewing the documents at issue, Nelson Mullins would not object to providing them to the Court only for an in camera review to assist in the Court's determination.

10

increases the opportunity for potential adversaries to obtain the information.'" *Id.* (quoting *In re Grand Jury Subpoenas*, 561 F. Supp. 1247, 1257 (E.D.N.Y. 1982)).

Here, Nelson Mullins turned information and documents over to the government voluntarily. It did so outside the grand jury and without any guarantees that the documents would be kept confidential. Nelson Mullins has therefore waived any work product protection the Withheld Documents were subject to.

Further, and importantly, Nelson Mullins made this disclosure on behalf of JEA to accomplish JEA's own purposes – seeking the prosecution of Mr. Zahn. The courts treat disclosures of work product materials to the government as falling into three categories. First, the disclosing party and the government may be adversaries. Disclosing work product to the government when a party is in an adversarial position to the government waives work product protections. *See, e.g., Doe No. 1 v. United States*, 749 F.3d 999, 1008 (11th Cir. 2014). Second, the disclosing party and the government may be allies. The disclosure of work product where the disclosing party and the government have a common interest in pending litigation is generally not treated as a waiver of work product protections. *Castle v. Sangamo Weston, Inc.*, 744 F.2d 1464, 1466 (11th Cir. 1984). Third, the disclosing party and the government may be neither adversaries nor allies, in which case whether there has been a waiver may turn on the purpose of the disclosure. And specifically, as relevant here, where a party voluntarily produces work product to the government to seek the investigation or prosecution of the producing party's adversary, the work product protection may be waived. *See Absolute Activist Value Master Fund Ltd. v. Devine*, 2017

11

WL 1830569, at *2 (M.D. Fla. May 8, 2017); *U.S. Info. Sys., Inc. v. Int'l Broth. of Elec. Workers Local Union No. 3*, 2002 WL 31296430, at *4 (S.D.N.Y. Oct. 11, 2002); *Info. Res., Inc. v. Dun & Bradstreet Corp.*, 999 F. Supp. 591, 593 (S.D.N.Y. 1998).

Here, Nelson Mullins' client JEA has an interest in seeing Mr. Zahn prosecuted in order to further its interests in its own litigation with Mr. Zahn. As early as December 2019, OGC personnel unhappy with the severance compensation Mr. Zahn would receive under his contract with JEA were speculating with one another about whether criminal charges against Mr. Zahn would negate his entitlement to that compensation. Their text messages to this effect are attached as Exhibit 4. Having chosen to provide the Withheld Documents to the government in an attempt to gain a litigation advantage over its adversary,[5] Nelson Mullins has waived any work product protection that was applicable to the Withheld Documents.

Nelson Mullins contends that its voluntary production of the Withheld Documents to the government did not waive work product protection on the premise that it shares a common interest with the government. Nelson Mullins has not met its burden to establish it is entitled to rely on the common interest exception to the work product waiver doctrine. *See Del Monte Int'l GMBH v. Ticofrut, S.A.*, - 2017 WL 1709784, at *6 (S.D. Fla. May 2, 2017) (party asserting work product protection bears the burden to establish its applicability). As the party asserting this protection, Nelson

---

[5] Nelson Mullins and JEA's interest in the outcome of this criminal prosecution makes Nelson Mullins' reliance on *Brown v. NCL (Bahamas), Ltd.*, 155 F. Supp. 3d 1335 (S.D. Fla. 2015), misplaced. Unlike Nelson Mullins, the cruise line in *Brown* disclosed work product "without a self-centered motivation." *Id.* at 1341.

Mullins was required to provide the Court with evidence of its existence, "which may be established by affidavit." *Id.* Such evidence would have to establish that it has a shared interest with the government "in actual or potential litigation;" "the fact that an opponent is a common adversary, is insufficient to justify successful invocation of the common interest doctrine." *Id.* at*7. The party seeking to take advantage of the common interest protection must establish that at the time communications were shared, the parties sharing them had "common legal interests" and "the act of sharing was part of an ongoing common legal enterprise." *In re Morning Song Bird Food Litig.*, 2017 WL 7512980, at *3 (S.D. Fla. Nov. 30, 2017). There was no common legal enterprise here. The government is not a co-party with Nelson Mullins or its client, JEA. And as explained above, the fact that a successful prosecution of Mr. Zahn might promote JEA's interests in its civil litigation against him is not sufficient to establish a common interest or provide a basis for deeming the Withheld Documents protected.

Further, Nelson Mullins has not demonstrated that it took affirmative, demonstrable steps to protect the confidentiality of the Withheld Documents, nor that there was an express common interest agreement between them and the government. *See Del Monte Int'l GMBH*, 2017 WL 1709784, at *7, *8. "Although a common interest understanding need not necessarily be in writing or a particular form, 'an agreement there must be.'" *Id.* at *8 (quoting *Hunton & Willliams v. U.S. Dept. of Justice*, 590 F.3d 272, 286 (4th Cir. 2010)). For the reasons explained above, there would be no basis for a common interest agreement in this case, and Nelson Mullins has provided no

13

such agreement in support of its argument that its production of the Withheld Documents was not a waiver.

Nelson Mullins has thus waived any work product protection that may have been applicable to the Withheld Documents.

> **3. Even if Nelson Mullins had not waived work product protection, that protection would be overcome by the Defendants' constitutional interests.**

Assuming for the sake of argument that Nelson Mullins were able to establish that the Withheld Documents are work product and that the work product privilege has not been waived, the Court should nonetheless order their production because Mr. Zahn and Mr. Wannemacher's Fifth Amendment due process rights are implicated in this criminal proceeding. See *In re King's Daughters Health Sys., Inc.*, 31 F.4th 520, 528 (6th Cir. 2022) (disclosure of work product required where defendant's "Fifth Amendment due process rights are in play"); *see generally Williamson v. Moore*, 221 F.3d 1177, 1182 (11th Cir. 2000) ("While opinion work product enjoys almost absolute immunity, extraordinary circumstances may exist that justify a departure from this protection"). Mr. Zahn and Mr. Wannemacher were required to provide compelled testimony that under *Garrity* and *Kastigar* may not be used against them in this criminal proceeding. *See* Doc. 114; Doc. 115. Nelson Mullins reviewed and used that testimony to investigate them, then discussed the fruits of its investigation with the prosecutor. It should not be allowed to shield those communications from scrutiny by deeming them work product.

14

Relatedly, the Withheld Documents are also subject to production because the prosecutor's mental state, and specifically, what information he and the members of the prosecution team have been made aware of, are critical issues in this case. Where the mental state of the prosecutor who received work product materials is in issue, the court may find there is a compelling need for the production of work product. *See Doubleday v. Ruh*, 149 F.R.D. 601, 608 (E.D. Cal. 1993); *see generally Cozort v. State Farm Mut. Auto. Ins. Co.*, 233 F.R.D. 674, 676 (M.D. Fla. 2005) (recognizing that the extraordinary circumstances necessary to require the production of work product may exist where the opposing party's mental state is at issue). Accordingly, even if Nelson Mullins were to ultimately make the showing required to establish that the Withheld Documents are and remain protected by the work product doctrine, the Court should nevertheless order their production.

## CONCLUSION

The Withheld Documents are relevant to the Defendants' argument that they should receive a *Kastigar* hearing, and Nelson Mullins has not met its burden to establish that Withheld Documents were work product or that they were produced under a common interest agreement. The Court should therefore reject Nelson Mullins' efforts to shield its communications with the prosecutor from scrutiny, deny Nelson Mullins' motion to quash, and instruct Nelson Mullins to produce the Withheld Documents.

Respectfully submitted,

/s/ *James E. Felman*
James E. Felman
   Florida Bar No. 0775568
Katherine Earle Yanes
   Florida Bar No. 0159727
Brandon K. Breslow
   Florida Bar No. 0123755
KYNES, MARKMAN
& FELMAN, P.A.
Post Office Box 3396
Tampa, FL 33601
(813) 229-1118
(813) 221-6750
JFelman@kmf-law.com
kyanes@kmf-law.com
bbreslow@kmf-law.com

NIELS P. MURPHY
  Florida Bar No. 0065552
CATHERINE M. LICANDRO
 Florida Bar No. 0041668
MURPHY & ANDERSON, P.A.
1501 San Marco Blvd.
Jacksonville, FL 32207
(904) 598-9282 (phone)
(904) 598-9283 (fax)
nmurphy@murphyandersonlaw.com
clicandro@murphyandersonlaw.com

*Counsel for Defendant Ryan Wannemacher*

/s/ *A. Brian Albritton*
A. Brian Albritton
   Florida Bar No. 0777773
Raquel Ramirez Jefferson
   Florida Bar No. 103758
PHELPS DUNBAR LLP
100 South Ashley Drive, Suite 2000
Tampa, FL 33602
Telephone: (813) 472-7557
Facsimile: (813) 472-7570
brian.albritton@phelps.com
ramirezr@phelps.com

Eddie Suarez
   Florida Bar No. 752540
THE SUAREZ LAW FIRM
1011 West Cleveland Street
Tampa, FL 33606
Telephone: (813) 229-0040
Facsimile: (813) 229-0041
esuarez@suarezlawfirm.com

*Counsel for Defendant Aaron Zahn*

## CERTIFICATE OF SERVICE

I certify that on November 23, 2022, the foregoing response was electronically filed with the Clerk of the Court using the Electronic Filing System, which will serve a copy on all counsel of record.

*/s/ James E. Felman*
James E. Felman
