UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                          CASE NO. 3:22-cr-23-BJD-MCR

AARON ZAHN and
RYAN WANNEMACHER,

    Defendants.
_____/

## ORDER

**THIS CAUSE** is before the Court on Defendants' Motion to Compel Compliance with Federal Rule of Criminal Procedure 16 or for Particularized Discovery Order ("Motion") (Doc. 304) and the United States' Memorandum Opposing Defendants' Motion ("Opposition") (Doc. 309). For the reasons stated herein, the Motion is due to be **DENIED**.

I.    **The Parties' Positions**

Defendants request "an order under Federal Rule of Criminal Procedure 16(a)(1)(E) or Rule 16(d)(1) that requires the government to identify—from the multiple terabytes of discovery it has produced in this case—the items it intends to use in its case-in-chief at trial in addition to the exhibits admitted at the *Kastigar* hearing, if it is permitted to do so, and to supplement that disclosure as necessary." (Doc. 304 at 1 (footnote omitted).)

Defendants state that "the government has not made such a disclosure notwithstanding a prior agreement to do so as part of the discovery process in this case." (*Id.* at 1-2.) They point out that the volume of the government's discovery productions to date is "staggering," including "*hundreds of thousands* of native files, which amount to *multiple terabytes* of digital data" and "*dozens* of forensic images," and "[t]he physical equivalent of these productions is more than 600 million pages of printed text." (*Id.* at 3-4 (emphasis in original).) Defendants add:

> Faced with these voluminous productions—and as discussed at prior status conferences—the Defendants have employed numerous search and review methods for electronic discovery to discern what items the government intends to use in its case-in-chief. Yet the government has refused to limit in any way its right to use in its case-in-chief any document from anywhere within its discovery productions.
>
> . . . The government repeatedly recasts the Defendants' request for compliance with Rule 16 as one for a premature "exhibit list." It has offered to share with the Defendants "general tranches of documents" or "evidence" that it "may mark for trial" and refuses to "bind[]" itself to any "specific list four months before a trial." Thus, although the government had previously agreed to comply with Rule 16, that agreement has since evaporated necessitating the filing of this motion.
>
> . . . The government's "broad brush approach" to discovery fails to satisfy its obligation under Rule 16(a)(1)(E)(ii) to disclose to the Defendants what items it intends to use in its case-in-chief.

(*Id.* at 5-7.)

Defendants concede that "[t]here are district court decisions from

2

within the Eleventh Circuit ruling that Rule 16(a)(1)(E) 'does not require the government to specify from among the universe of discovery documents produced to defendant which of those documents it intends to rely upon at trial,'" but state that "[n]one of these decisions are binding on this Court, and this issue has not been addressed by the Eleventh Circuit." (*Id.* at 8-9.) According to Defendants:

> These decisions do not support denial of this motion for three reasons. First, none of them address the more compelling interpretation of Rule 16(a)(1)(E), explained above, which the Defendants rely on here.
>
> Second, they do not consider the logical reasoning underlying an interpretation of Rule 16 that requires the government to identify the evidence it intends to use in its case-in-chief from voluminous discovery—the Defendants cannot inspect, copy, or photograph items they do not know exist because they were produced in large swaths of data. . . .
>
> Third, and finally, these decisions rest on the incorrect premise that requiring the government to identify the items in discovery it *intends* to use in its case-in-chief would reveal its trial strategy or, as the *Scrushy* court put it, "to tip its hand prematurely[.]" . . . The Defendants are not asking the Court to compel production of a draft of the government's closing argument, its legal memoranda, or even a premature exhibit list. . . . Rule 16 fails to ensure fairness when, as here, the government can produce a large number of documents to a defendant and not identify which of those documents it intends to use against him in meeting its heavy burden at trial. The Defendants merely ask for what the Rules already guarantee: a level playing field.

(*Id.* at 9-10.)

Defendants further argue that "[t]here is good cause for the Court [to

3

exercise its discretion] to enter a particularized discovery order under Rule 16(d)(1) that requires the government to immediately identify for the Defendants the items it intends to introduce in its case-in-chief." (*Id.* at 11.) Defendants explain there are three reasons for doing so:

> First, as shown, the government's discovery productions are extraordinary in size, and they cannot be reasonably limited, by either the Defendants' estimated guesswork or, as discussed further below, any form of technology-assisted review, based on the government's broad allegations in the Indictment. The Defendants have a constitutional right to counsel that has thoroughly reviewed the government's discovery productions. . . . But counsel cannot spend every waking hour reviewing documents, and there is more to trial preparation than discovery review. . . .
>
> Second, the significant efforts by the Defendants' counsel to manage and review the government's discovery productions as efficiently as possible further demonstrates why particularized discovery is needed here. . . . In short, the Defendants have used two separate electronic discovery repositories, begun their own linear review using advanced search protocols, and worked with a technology-assisted review platform. Still, the sheer volume of discovery has left counsel navigating this daunting endeavor mostly blind. . . .
>
> Third, and finally, a particularized discovery order would not prejudice the government. A particularized discovery order does not comment on whether the government has acted in good faith, but only reflects the reality that the government has had sufficient time to organize the evidence it has amassed for production. . . . The government would also not be required to reveal trial strategy or disclose its opinion work-product as to the relative importance of any particular items it is required to disclose under Rule 16.

(*Id.* at 11-13.)

In its Opposition, the Government acknowledges that its fifteen discovery productions to date have been "vast," but notes that each production has included "a detailed index of the documents and other materials that were produced." (Doc. 309 at 1-2.) The Government explains:

> [O]ver eighteen months ago, the defendants had all grand jury transcripts of the approximately twenty-two witnesses who testified, including the exhibits thereto, as well as those from the two FBI Agents. These productions of grand jury transcripts occurred well before any requirement of the *Jencks* Act, and in anticipation of the defendants' forthcoming *Kastigar* Motions. Government['s] counsel has repeatedly informed the defendants' counsel that the overwhelming majority of trial exhibits could be found in the grand jury record and in the Government's Amended Exhibit List filed after the *Kastigar* Hearing on May 30, 2023 (Doc. 265). Still, this is apparently unsatisfactory to the defendants. Yet, they have no rule to enforce what they want - - a Government['s] trial exhibit list now.
>
> The defendants are correct that a significant number of terabytes of information have been produced, but what the defendants do not focus on is that much of this happened at their own request. When presented a log of every computer device that current and former senior leadership team members maintained at JEA and asked which images they wanted, the defendants essentially said - - all of them. That is what they got.
>
> . . . The Government has not created a final trial exhibit list at this time. The Government anticipates adding various summary exhibits to a final exhibit list, and has advised the defense that this will include a summary exhibit concerning Plant Vogtle (discussed further below). When those are created, the Government will provide them.
>
> The Government is not opposed to a mutual date for exchange of Exhibit Lists and Witness Lists. Based on the trial date of

> February 5, 2024, the Government proposes a deadline of
> January 19, 2024, for the mutual disclosure.

(*Id.* at 2-3 (emphasis omitted).)

The Government points out that:

> The plain language of Rule 16(a)(1)(E)(ii) does not require the Government to specify from the universe of discovery documents produced to defendants those that it intends to rely upon at trial.
> . . .
>
> . . . [Further,] district courts in the Eleventh Circuit—including but not limited to the courts cited in the defendants' motion—have uniformly rejected arguments similar to the one advanced by the defendants. . . . In the present case, the defendants' request for what is essentially an exhibit list is premature and would prejudice the Government, which has more than sufficiently fulfilled its Rule 16 obligations.

(*Id.* at 4-6.)

The Government states that to the extent Defendants seek a particularized discovery order, such an order has already been entered (*see* Doc. 36), and the Government has complied with it. (Doc. 309 at 6.) The Government explains:

> Based on the early disclosures, the *Kastigar* Hearing, and Government['s] counsel continuing to make targeted disclosures of items the Government intends to use at trial, the defendants have already received much more than they are entitled to. There is no need for another particularized discovery order.

(*Id.*)

Further, to the extent Defendants suggest that the Court should automatically exclude every Government exhibit that was not specifically

6

marked at the *Kastigar* Hearing (*see* Doc. 304 at 1 n.1), the Government states that this is not what is required under *United States v. Hampton*, 775 F.2d 1479, 1487 (11th Cir. 1985). (Doc. 309 at 7.) The Government distinguishes *Hampton* from the present case and states:

> In this case, for the *Kastigar* Hearing, the Government marked 165 exhibits (Doc. 265), and submitted the entirety of the grand jury proceedings (with exhibits) (Doc. 163) *in camera* to the Court. Document 163 has over 350 attachments. This constitutes thousands of pages. The Government's burden under *Kastigar* is to show the independent sources from where the Government's evidence originated that are separate and apart from the defendants' statements to the Office of General Counsel (the *Garrity* statements). The Government anticipates taking certain information from these exhibits to prepare summary exhibits for trial. A couple of examples are as follows:
>
> • The Government intends to offer evidence that JEA's solar adoption and sales decline projections provided to the JEA Board during the strategic planning in the summer of 2019 (which were covered at the *Kastigar* Hearing) were false and misleading. To do this, the Government intends to analyze information available to Aaron Zahn *before* he gave his *Garrity* statement, the actual solar adoption statistics that have occurred since strategic planning, and the concomitant electric sales per megawatt/hour. The Government anticipates offering various slides and summary exhibits through a particular JEA employee.
>
> • The Government intends to prepare summary exhibits to explain the Plant Vogtle liability pursuant to the Purchase Power Agreement for nuclear power involving the Southern Group and the Municipal Electric Authority of Georgia (MEAG). Former JEA CEO Paul McElroy testified regarding the Plant Vogtle liability during the *Kastigar* Hearing (*See* Vol. 4, p. 209, line 5 – p. 212, line 10). While the summary exhibit did not exist at the time of the *Kastigar* Hearing, there is no basis for the defendants to contend that McElroy's knowledge about Plant Vogtle stems in any way from the defendants' *Garrity* statements.

7

> Thus, the categorical notion that any Exhibit not specifically listed on the Government's *Kastigar* Hearing exhibit list should automatically be excluded does not make sense. These examples do not present the same scenario as in *Hampton* . . . .
>
> . . . The law does not require the Court to categorically exclude exhibits that were not introduced at the *Kastigar* Hearing, and the Court should reject the defendants' insistent request that it do so.

(Doc. 309 at 7-9 (footnote omitted).)

## II.   Discussion

The Court finds that Defendants are not entitled to the relief sought pursuant to Rule 16 of the Federal Rules of Criminal Procedure. Rule 16(a)(1)(E)(ii) requires the Government, upon Defendants' request, to permit Defendants "to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items," if such items are within the Government's possession, custody, or control, and the Government intends to use such items in its case-in-chief at trial. Fed.R.Crim.P. 16(a)(1)(E)(ii).

Importantly, however, Rule 16(a)(1)(E)(ii) does not require the Government "to otherwise identify particular evidence within what it produces," even though the Court has discretion to order such relief. *United States v. Martin*, No. 8:17-cr-301-T-24AAS, 2018 WL 3617316, *1 (M.D. Fla. May 21, 2018); *see also United States v. Palacio*, No. 21-20301-CR-GAYLES/

TORRES, 2021 WL 4066894, *6 (S.D. Fla. Sept. 7, 2021) (stating that "while the Government must produce certain categories of information under Rule 16 – including items sourced from what the Government intends to use at trial – there is no requirement to *identify* these materials"); *United States v. Perraud*, No. 09-60129-CR, 2010 WL 228013, *11 (S.D. Fla. Jan. 14, 2010) (stating that "although Rule 16(a)(1)(E) does not require the United States to identify documents it intends to use in its case in chief, the Court may, in appropriate circumstances, order such relief," but "courts should not entertain such requests for relief lightly"); *United States v. Scrushy*, No. CR-03-BE-530-S, 2004 WL 483264, *3 (N.D. Ala. Mar. 3, 2004) ("The court agrees with the Government that the plain language of Rule 16(a)(1)(E)(ii) does not require the Government to *specify* from among the universe of discovery documents produced to defendant which of those documents it intends to rely upon at trial.").[1] As explained in *Scrushy*:

> The argument that the Government must identify and specify the discovery produced is meaningless, unless it is insisted that the specification be accurate, and if that is insisted, then there must be consequences for inaccuracy, intentional or not. The obligation imposed by Rule 16 is one of discovery, to make certain

---

[1] To the extent Defendants cite cases to support their contrary position, the Court determines that those cases are neither binding nor persuasive. For example, some of those cases interpret Rule 16(a)(1)(E) as requiring the government to "identify specifically which items it intends to use in its case-in-chief at trial." *United States v. O'Keefe*, No. 06-0249 (PLF), 2007 WL 1239207, *2 (D.C. Apr. 27, 2007); *see also United States v. Crowder*, 325 F. Supp. 3d 131, 136 (D.C. 2018) (same); *United States v. Rickets*, No. 15-153, 2015 WL 9478136, *3 (E.D. La. Dec. 29, 2015) (same).

9

> categories documents available to the defense. The rule does not impose a duty on the Government to tip its hand prematurely by requiring it to give the defendant a roadmap of its strategy. The act of categorizing documents under Rule 16 for the defendant necessarily reveals the Government's strategic view of the significance of each document – whether it is one pertinent to an anticipated defense or one the Government itself intends to use. The rule does not require that outcome. Although it requires an exchange of information, it does not open the door to discovery of strategy.

2004 WL 483264 at *3.

Here, the Government has satisfied its obligations under Rule 16 by providing defense counsel with access to far more information and materials than the rule requires, such as transcripts of Grand Jury testimony and summaries of witness interviews as part of its fifteen discovery productions, including a detailed index of the documents and materials produced. The Government has also provided Defendants with a sufficient roadmap of what is arguably most relevant to its case by advising Defendants that the overwhelming majority of the Government's trial exhibits could be found in the Grand Jury record and in the Government's Exhibit List (Doc. 265), filed after the *Kastigar* hearing.

Additionally, it would be premature and prejudicial for the Government to produce its final trial exhibit list at this time. As the Government states, it anticipates creating summary exhibits and providing them to Defendants upon completion. In addition, the Government states that it is agreeable to

a mutual exchange of the parties' final trial exhibit and witness lists on January 19, 2024 assuming the trial remains set for the term commencing February 5, 2024.

While Defendants "complain that the Government's discovery [is] so voluminous that it hinder[s] their pretrial preparation," they can "hardly complain about that" since they can ask for a continuance if they have "insufficient time to sort things out." *United States v. Jordan*, 316 F.3d 1215, 1253 (11th Cir. 2003); *see also United States v. Richards*, 659 F.3d 527, 544-45 (6th Cir. 2011) (citing, *inter alia*, *Jordan*, 316 F.3d at 1253, and finding that "the government fulfilled—indeed exceeded—its obligations under Rule 16, and reasonably accommodated Richards, who could have, but did not, ask for a continuance"); *Scrushy*, 2004 WL 483264 at *3 (denying defendant's motion to compel compliance with Rule 16(a)(1)(E)(ii), and citing, *inter alia*, *Jordan*, 316 F.3d at 1253, which "offered cold comfort" to defendants who argued that the government's voluminous discovery hindered their pretrial preparation). As the Government points out, much of the voluminous production here happened at Defendants' own request. Further, unlike in some of the cases they cite, Defendants cannot complain of having limited staff "to sort things out," *Jordan*, 316 F.3d at 1253, when the docket shows that each Defendant is represented by six attorneys, not including any additional support staff.

11

While Defendants also seek relief under Rule 16(d)(1), which allows the Court, for good cause, to "deny, restrict, or defer discovery or inspection, or grant other appropriate relief" at any time, the Court declines to do so here. As stated in *Perraud*, "this is not a case where the Government appears to have attempted to obfuscate the relevant documents by burying them without direction under an avalanche of irrelevant materials." 2010 WL 228013 at *11. Upon consideration of the parties' arguments and the relevant law, the Court concludes that "the Government has offered a reasonable and appropriate approach to resolving Defendants' Motion," *id.* at *12, by offering to provide its summary exhibits upon completion and to provide its final trial exhibit and witness lists by January 19, 2024, assuming a trial term commencing February 5, 2024.

Accordingly, it is **ORDERED**:

1. The Motion (**Doc. 304**) is **DENIED**.

2. The parties are directed to exchange their final trial exhibit and witness lists **on or before January 19, 2024**, assuming the trial remains set for the term commencing February 5, 2024.

3. The Government shall provide its summary exhibits to Defendants as soon as they are completed.

**DONE AND ORDERED** at Jacksonville, Florida, on November 27, 2023.

                                            MONTE C. RICHARDSON
                                  UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record