UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.          CASE NO. 3:22-cr-23-BJD-MCR

AARON ZAHN

**NOTICE OF POTENTIAL CONFLICT AS TO
APPELLATE COUNSEL FOR DEFENDANT AARON ZAHN**

The United States of America hereby notifies the Court of a potential conflict of interest involving defendant Aaron Zahn's appellate counsel, Samuel J. Salario, Jr. Mr. Salario is married to an Assistant United States Attorney who previously worked on this case in a supervisory manner. Commensurate with its duty to protect the integrity of convictions and to notify the Court of potential conflicts, the United States provides this Notice of this potential conflict.

Because this case is on appeal, but a motion for consideration of bond pending appeal has been filed in this Court (Doc. 561), to which the Government responded (Doc. 562), the United States will file a notice about this potential conflict in both this Court and the Eleventh Circuit.

I.      **Factual Background**

On August 2, 2024, Samuel J. Salario, Jr., from the law firm of Lawson Huck Gonzalez PLLC, filed a Notice of Appearance as counsel for Aaron Zahn (Doc.

1

544).[1] Mr. Salario's spouse is Assistant United States Attorney Karin Hoppmann.

AUSA Hoppmann served as the First Assistant United States Attorney (FAUSA) for the Middle District of Florida from approximately January 2018 to February 27, 2021, when then-United States Attorney Maria Chapa Lopez resigned from her position. Upon USA Chapa Lopez's resignation, then-FAUSA Hoppmann became the Acting United States Attorney. AUSA Hoppmann served as Acting United States Attorney from February 28, 2021, to December 24, 2021.[2]

The investigation that led to the indictment of Aaron Zahn began in January 2020, and the grand jury indicted Zahn on March 2, 2022 (Doc. 1). From the beginning of the investigation until the end of her service as Acting United States Attorney on December 24, 2021, AUSA Hoppmann served in a supervisory role over this matter, first as FAUSA and then as Acting United States Attorney, including receiving and considering various memoranda about the investigation and a proposed Indictment.[3]

AUSA Hoppmann's spouse, Mr. Salario, now represents Zahn in this case that AUSA Hoppmann previously supervised. AUSA Hoppmann has indicated that she did not share any confidential or privileged information with Mr. Salario when

---

[1] Mr. Salario's partner, Paul C. Huck, Jr., also filed a Notice of Appearance the same day (Doc. 545).

[2] Current United States Attorney Roger B. Handberg was named Interim United States Attorney effective December 25, 2021.

[3] AUSA Hoppmann has had no role in the case on behalf of the United States since December 24, 2021.

2

she was working on the case, nor since then. Mr. Salario has indicated that he is aware of and believes he has complied with his ethical duties with respect to his representation of Zahn, though he has declined to indicate whether he has obtained a waiver from his client of any potential conflict or whether he has received any confidential or privileged information from his spouse.

## II.     Legal Framework

All counsel's conduct in this case is governed by both the American Bar Association (ABA) Model Rules of Professional Conduct (Model Rules) and the Florida Rules of Professional Conduct. *See* Middle District of Florida (MDFL) Local Rule 2.01(e) ("A lawyer appearing in the Middle District . . . is bound by the rules governing the professional conduct of . . . The Florida Bar."); 11th Cir. R. Add. Eight, R. Gov'ng Att'y Discipl. in the U.S. Ct. of App. for the 11th Cir. 1(A) (Apr. 2024) ("[A]ttorneys practicing before the Court shall be governed by . . . [the ABA Model Rules] and the rules of professional conduct adopted by the highest court of the state(s) in which the attorney is admitted to practice to the extent that those state rules are not inconsistent with [the Model Rules], in which case the model rules shall govern.").

It is the United States' duty to ensure the integrity of criminal proceedings, which includes advising the Court of any potential conflicts of interest.[4] *See, e.g., In re*

---

[4] When the government learns that defense counsel has an actual or potential conflict, prosecutors may alert the Court about the issue or affirmatively seek disqualification. *See, e.g., United States v. Malpiedi*, 62 F.3d 465, 470 (2d Cir. 1995) ("The government can itself seek to disqualify defense counsel because of a conflict."). The United States is not presently moving for the disqualification of

*Paradyne Corp.*, 803 F.2d 604, 608 n.7 (11th Cir. 1986) (noting "the obligation of [government] attorneys to bring to a court's attention any 'possible ethical violation concerning a matter before [the] court,'" quoting *In re Gopman*, 531 F.2d 262, 265 (5th Cir. 1976)); *Ciak v. United States*, 59 F.3d 296, 306 n.8 (2d Cir. 1995) (prosecutor should raise potential conflicts because "it is always in the government's interest to 'protect the record'"); *United States v. Tatum*, 943 F.2d 370, 379–80 (4th Cir. 1981) ("[W]hen a conflict situation becomes apparent to the government, the government has a duty to bring the issue to the court's attention . . . ."). This is so for ethical and prudential reasons: "[c]onvictions are placed in jeopardy and scarce judicial resources are wasted when possible conflicts are not addressed as early as possible." *United States v. Stantini*, 85 F.3d 9, 13 & n.3 (2d Cir. 1996) (collecting cases). Further, government attorneys, like the undersigned, owe duties of competence and diligence to the United States under the applicable rules of professional conduct. *See* Model R. Prof'l Conduct 1.1, 1.3; Fla. R. Prof'l Conduct 4-1.1, 4-1.3. Based on the above precedent, such obligations include taking appropriate steps to protect the integrity of criminal proceedings from collateral attack.[5]

Model Rule 1.7 generally prohibits a lawyer from representing a client if

---

Mr. Salario. Rather, the sole purpose of this motion is to bring the relevant facts to the Court's attention.

[5] Paragraph 15 of the Commentary to Rule 4-1.7 of the Florida Rules of Professional Conduct also recognizes that "opposing counsel may properly raise" a question about a potential conflict "where the conflict is such as clearly to call into question the fair or efficient administration of justice." The commentary counsels that such "objection should be viewed with caution" due to its potential to be used as a "technique of harassment." The United States intends no harassment of any kind and seeks only to inform this Court of the facts, as it knows them, underlying this potential conflict.

4

"there is a significant risk that the representation . . . will be materially limited . . . by a personal interest of the lawyer." Model R. Prof'l Conduct 1.7(a)(2); *accord* Fla. R. Prof'l Conduct 4-1.7(a)(2). As the commentary to the Model Rule explains:

> When lawyers representing different clients in the same matter or in substantially related matters are closely related by blood or marriage, there may be a significant risk that client confidences will be revealed and that the lawyer's family relationship will interfere with both loyalty and independent professional judgment. As a result, each client is entitled to know of the existence and implications of the relationship between the lawyers before the lawyer agrees to undertake the representation. Thus, a lawyer related to another lawyer, e.g., as parent, child, sibling or spouse, ordinarily may not represent a client in a matter where that lawyer is representing another party, unless each client gives informed consent. The disqualification arising from a close family relationship is personal and ordinarily is not imputed to members of firms with whom the lawyers are associated. *See* Rule 1.10.

Model R. Prof'l Conduct 1.7 cmt. [11]; *accord* Fla. R. Prof'l Conduct 4-1.7 cmt. ¶ 16 (addressing "Family relationships between lawyers"). The Florida Rules explicitly prohibit a lawyer "related by blood, adoption, or marriage to another lawyer as parent, child, sibling, or spouse" from representing a client in a matter directly adverse to a person who the lawyer knows is represented by the related lawyer, except with the client's informed consent, confirmed in writing or clearly stated on the record at a hearing." Fla. R. Prof'l Conduct R. 4-1.7(d).

A lawyer may represent a client notwithstanding a conflict of interest under Model Rule 1.7(a)(2) if:

> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (2) the representation is not prohibited by law;

5

>   (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>
>   (4) each affected client gives informed consent, confirmed in writing.

Model R. Prof'l Conduct 1.7(b); *accord* Fla. R. Prof'l Conduct 4-1.7(b). "'Informed consent' denotes the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." Model R. Prof'l Conduct 1.0(e); Fla. R. Prof'l Conduct Terminology ¶ 6.

### III.  Conflict Analysis

Notwithstanding the fact that AUSA Hoppmann no longer represents the United States in this case, the same or similar concerns that would give rise to a conflict of interest if AUSA Hoppmann's and Mr. Salario's representation were concurrent also exist here, where Mr. Salario is representing a client against a party (the United States) previously represented by his spouse. Specifically, the Model Rules acknowledge that "there may be a significant risk that client confidences [were] revealed and that [Mr. Salario's] family relationship will interfere with both loyalty and independent professional judgment" in his representation of Zahn due to his relationship with AUSA Hoppmann. *See* Model R. Prof'l Conduct 1.7 cmt. [11].

As to the risk that client confidences were revealed, as set forth above, AUSA Hoppmann has stated that she did not disclose confidential or privileged information to Mr. Salario, while Mr. Salario has informed the United States that he believes he has complied with his ethical obligations, without directly answering the question of

6

whether he ever received information about this case from his spouse. We are aware of no information to the contrary but even so, the commentary to the Model Rules recognizes a "significant risk" that such information may pass between persons related by marriage, so the United States brings this potential conflict to this Court's attention.

Additionally, and more importantly, the rules of professional conduct recognize the "significant risk . . . that [Mr. Salario's] family relationship will interfere with both loyalty and independent professional judgment" in his representation of Zahn. *See* Model R. Prof'l Conduct 1.7 cmt. [11]. AUSA Hoppmann had decision-making authority over the case and exercised that authority during her time as FAUSA and Acting USA. By representing Zahn on appeal, Mr. Salario, at least indirectly, will be challenging work that his wife supervised. Where another lawyer would have no personal interests that would cause any hesitation about attacking a conviction in which AUSA Hoppmann was previously involved, Mr. Salario does have a personal relationship that may render him reluctant to do so to the extent that it may reflect poorly on his spouse. Thus, Mr. Salario's "family relationship" with AUSA Hoppmann could "interfere with" his "loyalty and independent judgment" in identifying and pursuing relevant appellate issues on Zahn's behalf.

For all of these reasons, we think that there may be a "significant risk" that Salario's representation of Zahn will be "materially limited" such that he likely has a conflict of interest in representing Zahn. *See* Model R. Prof'l Conduct 1.7(a)(2) &

7

cmt. [11]; Fla. R. Prof'l Conduct 4 1.7(a)(2). The United States is unaware to what extent Mr. Salario has informed his client of these issues and sought his client's consent to continue the representation under Model Rule 1.7(b) or Florida Rule of Professional Conduct 4-1.7(b).

And in any event, this Court may wish to conduct an inquiry to ensure the adequacy of Zahn's informed consent. The United States acknowledges that *ex parte* consideration by the Court may be appropriate to address the concerns described below due to potentially privileged information that may be at issue. The Court could hold a hearing akin to those held in situations where a lawyer represents multiple defendants in a criminal proceeding who may have diverging interests. *See Wheat v. United States*, 486 U.S. 153 (1988); *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975). The goal of such a hearing would be to resolve any possible "tension" between Zahn's sixth amendment right "to effective representation free from conflicts of interest . . . and a more limited right to representation by counsel of one's choice." *See Paradyne*, 803 F.2d at 608.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By: */s/ Tysen Duva*
A. Tysen Duva
Assistant United States Attorney
Florida Bar No. 0603511
300 N. Hogan Street, Suite 700
Jacksonville, Florida 32202
Telephone: (904) 301-6300
Facsimile:  (904) 301-6310
email: Tysen.Duva@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Counsel of Record

*/s/ Tysen Duva*
A. TYSEN DUVA
Assistant United States Attorney