UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

v.                                                                              Case No. 3:22-cr-00023-BJD-MCR

**AARON ZAHN,**

      **Defendant.**

      _____/

**DEFENDANT'S RESPONSE TO NOTICE OF POTENTIAL CONFLICT
AS TO APPELLATE COUNSEL FOR DEFENDANT AARON ZAHN[1]**

The Government's Notice suggests that this Court "may wish to conduct an inquiry" about a potential conflict of interest because one of Mr. Zahn's appellate attorneys is married to a Government attorney who is not working on Mr. Zahn's case. Doc. 563, at 8. Respectfully, no potential conflict of interest exists. But even if one did, it is waivable, and Mr. Zahn has waived it. This Court should respect Mr. Zahn's Sixth Amendment right to the counsel of his choice and conclude that the Government's Notice—which requests no affirmative relief but erroneously invites this Court to conduct an unauthorized *ex parte* inquiry—warrants no action. *See In re Paradyne Corp.*, 803 F.2d 604, 608 (11th Cir. 1986) (cited at Notice 2–3) (holding that *ex parte* hearings to address potential conflicts of interest violate a criminal defendant's Sixth Amendment right to the counsel of the defendant's choice).

---

[1] This is the response that Mr. Zahn moved without opposition for leave to file by November 4, 2024. Doc. 567. The Court has not yet ruled on that motion.

## Background

Mr. Zahn's direct appeal has been pending since August 2024. Doc. 548. Samuel J. Salario, Jr., a former Florida appellate judge, appeared in this Court shortly before the notice of appeal was filed, Doc. 544, and is representing him in the appeal. Mr. Salario is married to Assistant United States Attorney Karin Hoppmann. Doc. 563, at 2.

Previously, Ms. Hoppmann served as the First Assistant United States Attorney for the Middle District of Florida (from 2018 to February 2021) and immediately thereafter as Acting United States Attorney (until December 24, 2021). *Id.* The Government represents that it began investigating Mr. Zahn in January 2020, and that Ms. Hoppmann, until December 24, 2021, had supervisory authority over Mr. Zahn's case during the pre-indictment phase. *Id.* at 2. The Government does not claim that Ms. Hoppmann had a direct role in the investigation, the presentation to the grand jury, or Mr. Zahn's prosecution itself, or that she, in any other way, has represented the Government in Mr. Zahn's prosecution. *See id.*

By the Government's own telling, Ms. Hoppmann's supervisory role ended more than two months before Mr. Zahn's indictment, more than 26 months before the jury's verdict, and more than 31 months before Mr. Salario appeared as appellate counsel for Mr. Zahn. *Id.*; Docs. 475, 544. Thus, even if Ms. Hoppmann's supervisory responsibilities qualify as "representation" of the Government as it relates to Mr. Zahn, there is not—and never has been—concurrent representation of the Government by Ms. Hoppmann and of Mr. Zahn by Mr. Salario.

2

The Government does not claim—and presents no evidence to suggest—that confidential or privileged information has passed between the spouses. To the contrary, the Government represents that "AUSA Hoppmann has indicated that she did not share any confidential or privileged information with Mr. Salario when she was working on the case, nor since then." Doc. 563, at 2-3. Although the Government appears to fault Mr. Salario for declining to provide it with a similar assurance about its own employee and for declining to disclose the details of his communications with Mr. Zahn, it credits Mr. Salario with having "indicated that he is aware of and believes he has complied with his ethical duties with respect to his representation of [Mr.] Zahn." *Id.* at 3.

Notwithstanding these assurances, the Government has filed a Notice suggesting that Mr. Salario's marriage to Ms. Hoppmann creates a "significant risk" that his representation of Mr. Zahn will be "materially limited," thereby making it likely that Mr. Salario has a conflict of interest under the governing rules of professional conduct. *Id.* at 6-8. The Government perceives two such risks: (1) that client confidences will pass between the spouses; and (2) that Mr. Salario's relationship with his spouse will interfere with his loyalty and independent professional judgment in his representation of Mr. Zahn. *Id.* Although the Government suggests that the Court may wish to hold an "*ex parte*" inquiry, *id.* at 8, it does not argue—in this Court or the Eleventh Circuit—that these "risks" warrant Mr. Salario's disqualification or even rise to the level of an actual conflict of interest. Instead, it claims that the point of its Notice is "to bring the relevant facts to the Court's attention." *Id.* at 3-4 n.4.

3

In late August 2024, the Government contacted Mr. Salario about these perceived risks. Shortly thereafter, the undersigned counsel independently advised Mr. Zahn on the perceived risks. Without disclosing the content of the undersigned's privileged communications with Mr. Zahn, the undersigned discussed with Mr. Zahn the substance of the Government's Notice. The undersigned confirmed to Mr. Zahn—consistent with Mr. Salario's representation to the Government—that Mr. Salario had complied with his responsibilities under the rules of professional conduct governing his representation of Mr. Zahn. After having had the opportunity to confer with the undersigned counsel, Mr. Zahn remains steadfast in his desire to have Mr. Salario represent him on appeal and has confirmed his informed consent in writing.

Finally, the Government's Notice disclosed publicly for the first time information regarding the nature and extent of Ms. Hoppmann's supervisory work in Mr. Zahn's case. Doc. 563 ("AUSA Hoppmann served in a supervisory role over this matter . . . including *receiving and considering various memoranda about the investigation and a proposed Indictment*.") (emphasis added). No member of the public would have learned this information but for the fact that the Government disclosed it in the Notice. Moreover, if the Government's employee, Ms. Hoppmann, is credited, Mr. Salario never received this information from Ms. Hoppmann, *see* Doc. 563, at 2-3, and thus, Mr. Salario would have learned this information for the first time (like any member of the public) only upon reading the Notice.

4

## Analysis

### I.     No bona fide potential conflict exists.

The Government concedes that this case does not involve concurrent representation. Yet, the Government urges this Court to recognize that a "potential conflict" exists under rules of professional conduct governing concurrent conflicts of interest. *See* Doc. 563, at 6 ("Notwithstanding the fact that AUSA Hoppmann no longer represents the United States in this case, the same or similar concerns that would give rise to a conflict of interest *if* AUSA Hoppmann's and Mr. Salario's representation were concurrent also exist here, where Mr. Salario is representing a client against a party … *previously represented* by his spouse.") (emphasis added).

Mr. Salario's representation of Mr. Zahn is not concurrent to his wife's representation of the Government in Mr. Zahn's case. To repeat, as the Government's Notice and the docket reflect, Mr. Salario first appeared for Mr. Zahn *31 months after* his spouse's supervisory role in the matter ceased. Docs. 544, 563, at 2. Thus, the rules and comments—those governing concurrent conflicts and spouses representing clients directly opposed to each other[2]—do not apply.

---

[2] *See, e.g.,* Model R. Prof'l Conduct 1.7(a)(1)-(2) (defining "concurrent conflict of interest"); Fla. R. Prof'l Conduct 4-1.7(a)(1)-(2) (similarly worded); Model R. Prof'l Conduct 1.7 cmt. 11 (addressing the "significant risk[s]" that exist "[w]hen lawyers representing different clients in the same matter . . . are closely related by blood or marriage" and explaining that "a lawyer related to another lawyer . . . ordinarily may not represent a client in a matter where that lawyer is representing another party"); Fla. R. Prof'l Conduct 4-1.7(d) (governing spousal representation that is "directly adverse").

5

But even if these rules did apply—for example, on the argument that Mr. Salario is representing Mr. Zahn but also has existing responsibilities to his spouse and a personal interest in marital harmony—no bona fide potential conflict exists. Although the Government perceives two "significant risks" that may give rise to a conflict, it cites no facts and advances no reasonable argument supporting either.

**(a) The Government concedes no confidential information has been shared.**

Regarding the Government's first perceived risk—that Mr. Salario and his spouse have shared or may share confidential or privileged information—the Government's own notice represents just the opposite. The Government concedes that, according to Mr. Salario's spouse, no sharing has ever occurred. Doc. 563, at 2 ("AUSA Hoppmann has indicated that she did not share any confidential or privileged information with Mr. Salario when she was working on the case, nor since then."). Nor does the Government suggest that such sharing will occur in the future. That should be the end of that.

In any event, the Government does not explain—because it can't—how the sharing of the Government's information between the spouses could negatively impact Mr. Zahn's appeal. For starters, if Mr. Zahn were to learn the Government's confidential information, that would not harm him. The harm, if any, would be inflicted on the Government (not Mr. Zahn). But the Government's failure to seek Mr. Salario's disqualification indicates it has not been harmed.

Regardless, any such confidential information would be of no value to Mr. Zahn in the appeal. An appellate proceeding is different than a trial proceeding. The record

6

on appeal is, metaphorically, frozen in amber. Neither Mr. Zahn nor the Government can inject new information into the record. Simply put, even if Mr. Salario's spouse shared information with him (which, according to the Government, she has not done), Mr. Salario couldn't use that information in the appeal.[3]

**(b) Ms. Hoppmann's prior involvement is irrelevant to Mr. Zahn's appeal.**

For similar reasons, the Government's second perceived "significant risk"—i.e., that Mr. Salario might pull his punches in representing Mr. Zahn on appeal to avoid harming his spouse—is not a real one. According to the Government, Mr. Salario's spouse had a prior, supervisory role in Mr. Zahn's case that ended months before Mr. Zahn was indicted. Doc. 563, at 2. The Government has not explained how Ms. Hoppmann's preindictment supervisory involvement, unaccompanied by any involvement in the prosecution of the case in this Court or the Eleventh Circuit, would make her look bad if the case was reversed.

Because Ms. Hoppmann's involvement is not part of the record on appeal, Mr. Salario's prosecution of the appeal cannot make her look bad. That is because Mr. Salario is confined to the record on appeal. That record—consistent with the Government's Notice—makes it clear that Mr. Salario's spouse was not involved in the legal issues presented to the Court or the factual questions presented to the jury.

Moreover, had the Government not filed its Notice, the public (including Mr. Salario) would have been ignorant about the nature and extent of Ms. Hoppmann's

---

[3] The Government's Notice does not suggest that Mr. Salario is sharing Mr. Zahn's confidential and privileged information with Ms. Hoppmann.

7

involvement in Mr. Zahn's case. The Government's concern—that Mr. Salario may not zealously represent Mr. Zahn because "it may reflect poorly on his spouse" if he wins Mr. Zahn's appeal, *see* Doc. 563, at 7—has been created by the Government itself when it filed the Notice. Neither the public nor Mr. Salario would have known that a successful appeal by Mr. Zahn might reflect—poorly or otherwise—on Mr. Salario's spouse until the Government filed the Notice disclosing the nature and extent of his spouse's involvement.

In sum, the Government has not established that any bona fide potential conflict of interest exists.

**II.     If a potential conflict exists, it is waivable, and Mr. Zahn has waived it.**

If any conflict of interest in Mr. Salario's representation of Mr. Zahn arguably arises from Mr. Salario's marriage to Ms. Hoppmann (which it does not), the Government concedes that it is waivable. *See* Doc. 563, at 6-8. As explained above, after consulting with the undersigned independent counsel, including about the perceived risks identified in the Government's Notice, Mr. Zahn gave his informed consent, confirmed in writing, to Mr. Salario's continued representation. *See* Model R. Prof'l Conduct 1.7(b); Fla. R. Prof'l Conduct 4-1.7(b). Mr. Zahn is entitled to counsel of his choice, and he steadfastly maintains his choice to have Mr. Salario represent him on appeal.

**III.    An *ex parte* inquiry is neither authorized nor appropriate.**

The Government's Notice warrants no action either because no bona fide potential conflict exists or because the Government does not affirmatively request any

8

relief. In no circumstance, however, should the Court accept the Government's invitation "to conduct an inquiry to ensure the adequacy of Zahn's informed consent" to Mr. Salario's representation and to do so "*ex parte*." Doc. 563, at 8. To support conducting an inquiry, the Government relies on inapposite cases where a hearing is necessary because a single lawyer represents multiple defendants in a criminal proceeding. *See id.* The facts of those cases—where defendants insist on the right to privately retained counsel of their choice though the court may discern a conflict of interest in such representation—are worlds apart from the facts of this case, which lacks any bona fide potential conflict of interest.

The Eleventh Circuit's precedent precludes *ex parte* hearings even in cases where, unlike Mr. Zahn's case, a hearing is necessary for a defendant to waive the right to conflict-free counsel. *See In re Paradyne Corp.*, 803 F.2d at 610-12. Instead, in a case where judicial inquiry is necessary, the Court follows the colloquy procedure explained in *United States v. Garcia*, 517 F.2d 272, 278 (5th Cir. 1975), to determine whether the defendant has knowingly, voluntarily, and intelligently waived the right to conflict-free counsel. *See In re Paradyne Corp.*, 803 F.2d at 608, 611 (affirming adherence to *Garcia*'s "well established procedure to enable defendants to waive in open court their sixth amendment right to counsel free of conflict").

## Conclusion

Because the Government's Notice fails to establish a bona fide potential conflict of interest and seeks no relief that this Court may properly grant, the Court should conclude that the Notice warrants no action.

Dated: November 4, 2024

                                    Respectfully Submitted,

                                    **CREED & GOWDY, P.A.**

                                    /s/ *Bryan S. Gowdy*
                                    **Bryan S. Gowdy**
                                    Florida Bar No. 176631
                                    bgowdy@appellate-firm.com
                                    filings@appellate-firm.com
                                    865 May Street
                                    Jacksonville, Florida 32204
                                    Telephone: (904) 350-0075
                                    *Co-Counsel for Defendant Aaron Zahn*

## **CERTIFICATE OF SERVICE**

     I hereby certify that a true and correct copy of the foregoing has been filed with the CM/ECF website and served on November 4, 2024 to all counsel of record.

                                      */s/Bryan S. Gowdy*
                                      Attorney